UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON E. MILLER,

            Plaintiff,

  v.

CHAD PRENTICE, CHRIS OLSEN,

            Defendants.

CASE NO. C19-5761 BHS

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Jason Miller's motion for partial summary judgment, Dkt. 32, and Defendant Chad Prentice's motion for summary judgment, Dkt. 35. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows.

**I.    FACTUAL BACKGROUND**

On April 4, 2018, Prentice, a Washington State Patrol Trooper, responded to a dispatch report of a possible domestic violence situation. A 911 caller reported that she could see a woman opening the passenger-side door of a moving car on the highway, that she was worried that the passenger might try to get out, and that the woman seemed to be

ORDER - 1

yelling and upset. The 911 caller continued to follow the vehicle. Dispatch sent out a call to respond, and Prentice responded.

Prentice testified that he "received secondhand information or thirdhand information from a dispatcher that the car door was opening on the passenger's side with a female at freeway speeds, and there appeared to be – she appeared to be distraught. And they were giving active updates as the vehicle was being followed." Dkt. 33-1, Deposition of Chad Prentice ("Prentice Depo."), at 53:24–54:4. Prentice located the vehicle and pulled behind the car with his lights and sirens on. The driver of the vehicle, Miller, pulled over on the right-side shoulder of the road. The subsequent interaction between Prentice and Miller was captured by dash cam video and audio.

Prentice testified that, as he exited his cruiser and approached the vehicle, he believed he had probable cause to detain and arrest Miller. *Id.* at 57:7–21 ("I have probable cause to detain I would say"; "And I believe I had probable cause to arrest at the time of the stop as well"). He further explained that he believed he had probable cause to arrest when he first made contact with Miller because he could observe a woman who looked physically distraught; that information combined with what he knew from the 911 call led Prentice to decide that he was going to arrest Miller. *Id.* at 59:18–21, 65:25–66:6.

The dash cam footage shows Prentice exiting his cruiser and approaching Miller's car on foot with his right hand on his weapon. When he reached Miller's car, Prentice opened the driver-side door and instructed Miller to turn the car off and step out of the vehicle. Miller asked why he needed to get out of the vehicle, and Prentice responded "It's not really a question. Failing to obey is a criminal offense." Prentice can be heard

explaining that he is going to talk to the occupants separately. Miller complied, turned off his car, and exited the vehicle.

Once out of the vehicle, Prentice commanded Miller to "come on back." Prentice made physical contact with Miller's shoulder and guided him toward the back of the car. Miller objected to the contact, backed away from Prentice, and said "Why are you grabbing me, man? I haven't done anything illegal." Prentice then placed his left hand on a piece of equipment on his police belt (which Prentice asserts was his taser). Miller is then heard saying "Get your hand off your gun." Prentice then stepped towards Miller and told him he was failing to obey. Miller characterizes this instance as Prentice dramatically escalating the situation and yelling at Miller that he was failing to obey. Prentice asserts that Miller failed to follow a simple command and was becoming increasingly hostile.

Prentice then grabbed Miller's arms, forced them behind his back, and pushed Miller up against his vehicle. La Center Police Officer Chris Olsen, who had been called over by Prentice to assist and was approaching on foot, then arrived on the scene and began assisting Prentice in placing Miller into handcuffs. The video shows that one minute and five seconds elapsed from when Prentice pulled Miller over to when he went "hands on" and tried to place Miller in handcuffs.[1]

---

[1] Miller created a short clip of the dash cam footage solely for the purpose of his partial motion for summary judgment on the issue of probable cause. Prentice has provided the entire dash cam footage. The Court has reviewed both versions.

The dash cam footage continues to show Prentice and Olsen struggling to place Miller into handcuffs. Miller is seen kicking his legs as the officers attempt to handcuff him; he is also heard yelling that he has a broken arm. The officers then lowered Miller to the ground, and Prentice told Miller that he was resisting. Prentice then placed his knee on the small of Miller's back to try to control Miller. The officers then raised Miller to his feet and attempted to escort him to Prentice's cruiser. Miller is seen kicking his legs, and additional officers arrived to assist in the arrest. Miller was then lowered back to the ground, and his legs were placed in a restraint strap to prevent him from kicking. Miller was eventually placed into the back of the cruiser, about four and half minutes after Prentice first tried to place him in handcuffs.

Miller was charged with two counts of Assault in the Third Degree, Failure to Sign an Infraction, Resisting Arrest, and Obstructing a Public Servant. The State dropped all charges against him. He now brings 42 U.S.C. § 1983 claims against Prentice for violations of his Fourth Amendment rights...

## II.   PROCEDURAL HISTORY

On August 16, 2019, Miller sued Trooper Prentice and Officer Olsen[2] for violations of his Fourth Amendment rights arising out of Prentice's arrest of Miller. Dkt. 1. He alleges that Prentice lacked probable cause and used excessive force when arresting and restraining him in violation of the Fourth Amendment. *Id.*, ¶¶ 4.28, 5.1.

---

[2] Officer Olsen has settled with Miller and is no longer a party to this lawsuit. Dkt. 26.

On January 13, 2021, Miller moved for partial summary judgment on the issue of probable cause, Dkt. 32, and Prentice moved for summary judgment on all of Miller's claims, Dkt. 35. On February 1, 2021, the parties responded in opposition. Dkts. 41, 43. On February 5, 2021, the parties replied. Dkts. 45, 46.

### III.  DISCUSSION

Miller moves for partial summary judgment on the issue of probable cause, arguing that as a matter of law Prentice did not have probable cause to arrest him. Prentice moves for summary judgment on both of Miller's Fourth Amendment claims—false arrest and excessive use of force—asserting that he did have probable cause to arrest Miller and that his use of force was reasonable under the circumstances. In the alternative, Prentice argues that he is entitled to qualified immunity.

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.  Qualified Immunity**

Qualified immunity is outcome determinative here, though Prentice asserts it as an alternative argument. "Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under qualified immunity, a public

1  official is protected from suit when he or she "makes a decision that, even if

2  constitutionally deficient, reasonably misapprehends the law governing the

3  circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It protects "all but the

4  plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

5  335, 341 (1986).

6      In analyzing a qualified immunity defense, the Court must determine: (1) whether

7  a constitutional right would have been violated on the facts alleged, taken in the light

8  most favorable to the party asserting the injury and (2) whether the right was clearly

9  established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S.

10 194, 201 (2001). The Supreme Court has repeatedly held that clearly established law may

11 not be defined "at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148,

12 1152 (2018); *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018); *City of San Francisco v.*

13 *Sheehan*, 575 U.S. 600, __, 135 S. Ct. 1765, 1776 (2015). Instead, courts must look at the

14 "particular context" at issue and determine the question within the "specific context" of

15 the case. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

16     It is a close call whether Miller has established constitutional violations of his

17 Fourth Amendment rights for unlawful arrest and excessive use of force. But even if

18 there are constitutional violations, the law is not so clearly established to preclude

19 qualified immunity.

### 1. Unlawful Arrest

"The Fourth Amendment requires that a law enforcement officer have 'probable cause' to arrest an individual without a warrant." *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005). The test for whether probable cause exists is whether

> at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*United States v. Bernard*, 623 F.2d 551, 559 (1980) (internal quotation and citations omitted). A determination as to whether probable cause exists requires a "practical, common-sense" decision based on the totality of the circumstances known to the arresting officer. *See Illinois v. Gates*, 462 U.S. 213, 214 (1983); *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*

Miller argues that the issue of probable cause is not a close call—he asserts that Prentice did not have probable cause to arrest him for anything. Miller is likely correct that Prentice did not have probable cause to arrest him for reckless endangerment, false imprisonment, or "DV related issues," as Prentice claimed in his deposition. But it is questionable whether Prentice had probable cause to arrest Miller for obstruction. "A person is guilty of obstructing a law enforcement officer if the person willfully hinders,

1 delays or obstructs any law enforcement officer in the discharge of his or her official
2 powers or duties." RCW 9A.76.020. This obstruction statute is to be construed narrowly,
3 and there must be some conduct to establish a violation. *State v. E.J.J.*, 183 Wn.2d 497,
4 501–03 (2015).

5       Viewing the dash cam footage in the light most favorable to Miller (the
6 nonmoving party for the purposes of qualified immunity), Prentice gave Miller an order
7 to move to the back of the car so that he could conduct his investigation. Miller did not
8 comply with this command. Prentice then made physical contact with Miller and
9 attempted to place him in handcuffs. The dash cam footage shows Prentice reacting
10 swiftly and suddenly to Miller's step backwards, but Miller has not provided any
11 authority clearly establishing that attempting to handcuff a driver following a traffic stop,
12 when the officer is attempting to control the scene and the officer has a reasonable basis
13 to believe the driver is obstructing their official duties, violates his Fourth Amendment
14 rights.

15       Moreover, it is not clear to the Court that a reasonable officer would not have
16 believed that they had probable cause to arrest for obstruction just as Prentice did in this
17 situation. Qualified immunity allows for mistaken judgments. *Anderson v. Creighton*, 483
18 U.S. 635, 641 (1987) ("it is inevitable that law enforcement officials will in some cases
19 reasonably but mistakenly conclude that probable cause is present, and we have indicated
20 that in such cases those officials—like other officials who act in ways they reasonably
21 believe to be lawful—should not be held personally liable."). Even if Prentice's
22 conclusion that he had probable cause to arrest for obstruction was mistaken, such a

mistake is reasonable given the information Prentice knew from the 911 call and Miller's behavior towards Prentice. Regardless of whether Prentice was placing Miller in handcuffs to detain him for the purposes of investigation or whether he intended to effect an arrest, the result is the same. A reasonable officer could also believe that he had the authority to temporarily detain Miller to control the scene and conduct a *Terry* stop investigation.

Because Miller has not clearly established that his constitutional rights were violated, the Court concludes that it was objectively and legally reasonable for Prentice to conclude that he had probable cause to arrest Miller for obstruction. And even if he did not, there exists no clearly established law that placing an uncooperative suspect in handcuffs to control the scene in facts similar to those here is unconstitutional. Prentice is therefore entitled to qualified immunity. Prentice's motion for summary judgment as to Miller's unlawful arrest claim is GRANTED.

### 2. Excessive Use of Force

"A claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 109 (1989)) (internal quotation marks omitted). "In determining the reasonableness of the manner in which a seizure is effected, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 383 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)) (internal quotation marks omitted). Under *Graham*,

three specific factors must be considered in assessing the reasonableness of the force used: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (citing *Graham*, 490 U.S. at 396). Whether the suspect poses a threat to the safety of officers or others is "the most important single element of the three specified factors." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

As with his unlawful arrest claim, Miller has not clearly established that his constitutional rights were violated. Miller cites to *Gravelet-Blondin v. Shelton*, 728 F.3d 1086 (9th Cir. 2013), *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011), and *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010), for the principle that significant use of force cannot be justified when the crime at issue is not severe, the person presents no immediate threat, and they are not resisting. Dkt. 43 at 22. While there need not be a "case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court agrees with Prentice that Miller's cited cases do not clearly establish that the type of force used by Prentice (i.e., placing Miller into handcuffs) under the circumstances was unreasonable.

The Ninth Circuit has recognized that the "right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Gravelet-Blondin*, 728 F.3d at 1093 (citation omitted). But the cases cited by Miller involve police officers using tasers, which the Ninth Circuit has characterized as

among the "variety of non-lethal 'pain compliance' weapons used by police forces." *Bryan*, 630 F.3d at 833 (quoting *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 969 n.8 (2005)). In *Gravelet-Blondin*, the police officer discharged his taser in dart mode on a bystander after the bystander failed to comply with the officer's commands. 728 F.3d at 1090. The officer was not entitled to qualified immunity for the bystander's excessive use of force claim because it was clearly established that a taser in dart mode constituted more than trivial force. *Id.* at 1096.

Similarly in *Bryan*, a driver was pulled over for a seatbelt infraction and ordered to stay in the car but then exited the car, acted belligerently, and ignored repeated orders to get back in the car. 630 F.3d at 822. Without warning, the officer then shot the driver with his taser. *Id.* The use of the taser in this circumstance violated the driver's constitutional right to be free from excessive force under the Fourth Amendment. *Id.* at 832. In *Mattos*, the Ninth Circuit again considered the reasonableness of the use of a taser in dart mode. It concluded that the officers unreasonably deployed a taser against the wife of a suspect who "posed no threat to the officers" and "minimally resisted [] arrest[.]" *Mattos*, 661 F.3d at 451.

Here, Prentice did not use his taser on Miller when attempting to place Miller into handcuffs and rather made physical contact to put Miller in handcuffs. The dashcam footage shows Prentice placing his left hand on his utility belt, which he asserts was his taser, when Miller refused his command to move to the back of the car, but he never deployed the taser. Even if it can be said that Miller was engaging in passive resistance, the cases Miller cites do not establish that it was excessive force for Prentice to try to

place Miller into handcuffs. It is clear that Prentice could not use his taser in this situation, but it is not "beyond debate" that Prentice could not place his hands on Miller to place Miller in handcuffs.[3] *al-Kidd*, 563 U.S. at 741. Because the law is not clearly established that Prentice used excessive force in violation of Miller's Fourth Amendment rights, Prentice is entitled to qualified immunity. Prentice's motion for summary judgment as to Miller's excessive use of force claim is GRANTED.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiff Jason Miller's motion for partial summary judgment, Dkt. 32, is **DENIED** and that Defendant Chad Prentice's motion for summary judgment, Dkt. 35, is **GRANTED**.

All remaining motions are denied as moot, and the Clerk shall enter a **JUDGMENT** and close the case.

Dated this 17th day of March, 2021.

BENJAMIN H. SETTLE
United States District Judge

---

[3] The Ninth Circuit's recent decision in *Rice v. Morehouse*, __ F.3d __, 2021 WL 853301, at *6–8 (9th Cir. 2021), does not alter this conclusion. There, the officers pulled the driver out of his car, tripped the driver and forcibly threw him to the ground, and repeatedly struck and kneed the driver while he was on the ground, all of which was much greater than the force used by Prentice here.